UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

ANTHONY IZZO,

                               Plaintiff,

       against-                                <u>MEMORANDUM</u>
                                                 <u>OPINION AND ORDER</u>

ING LIFE INSURANCE and ANNUITY COMPANY,      CV 02-4530 (ADS) (ETB)


                                Defendant.
------------------------------------------------------------------------x

        Before the court is a show cause order dated April 8, 2005, directing the defendant, ING

Life Insurance ("ING") and its counsel, Sullivan & Worcester LLP ("Sullivan & Worcester"), to

show cause, in writing by formal affidavit(s) and accompanying memorandum of law, why

sanctions should not be imposed against either or both entities, pursuant to 28 U.S.C. § 1927 and

Federal Rules of Civil Procedure 16(f) and 37.  The show cause order is based on: (1) ING's and

its counsel's evasive and incomplete responses to plaintiff's discovery demands (and the order of

the Court) and (2) ING's thwarting of the plaintiff's re-submission to the ING Benefits Committee

by adding certain conditions, not disclosed to the Court or to the plaintiff, to the re-consideration

of the claim by ING's Benefits Committee.  This memorandum also addresses the plaintiff's

motion to preclude from evidence the 1980 Plan and related amendment documents, and plaintiff's

motion for an award of counsel fees pursuant to Rule 37.

    On August 15, 2002, plaintiff filed the complaint in this action, seeking a declaration that he is

entitled to participate in the Pension Plan for Certain Producers ("Producers Pension Plan") of

Aetna Life and Casualty Company ("Aetna"), Aetna being a predecessor of the defendant, ING

Life Insurance and Annuity Company ("ING"). The Benefits Committee of Aetna/ING, at some time prior to commencement of this action in August 2002, denied plaintiff's request for benefits under this plan. The history of this action is discussed in the Memorandum Opinion and Order dated April 8, 2005, familiarity with which is presumed.

This action was administratively closed on April 1, 2004, to afford the parties the opportunity to pursue private settlement procedures. The parties agreed that the plaintiff would make a re-submission to ING's pension Benefits Committee, and the plaintiff's understanding was that such re-submission would occur after the production of discovery documents that had yet to be turned over by the defendant. Prior to administrative closure, by order dated November 20, 2003, the defendant was ordered– without any opposition by ING– to comply with plaintiff's remaining outstanding documents request by December 5, 2003. (<u>See</u> Order by the undersigned, dated November 20, 2003.) The parties had engaged in deposition discovery and the re-submission contemplated re-consideration in light of this additional evidence not before the Benefits Committee when it made the original determination that led to commencement of this action. A critical part of the discovery encompassed by the November 20, 2003 order, which the defendant agreed to produce, was a copy of the 1980 version of the Pension Plan for Certain Producers of Aetna Life Insurance Company and Aetna Life Insurance and Annuity Company ("1980 Plan"), as well as documents related to the subsequent amendments to the plan.

Notwithstanding the failure to produce the 1980 Plan and amendment documents, plaintiff attempted to go forward with the re-submission to the Benefits Committee in January 2005. Plaintiff's counsel stated his understanding that the re-submission was to be considered for settlement purposes only, without prejudice to the rights of the parties. (Tr. at 21-22.) Defendant's counsel responded by phone to the statements in plaintiff's re-submission letter,

2

contending that any decision (denial) of the Benefits Committee on the re-submission would become part of the action and subject to whatever deference it was entitled to under ERISA. (Id. at 12-13.) Due to this dispute, the claim re-consideration did not occur, and plaintiff moved to restore the action to this Court's active calendar.

The action was restored to the active calendar on February 24, 2005. By letter dated March 10, 2005, having still not received a copy of the 1980 Plan and related amendment documents, plaintiff moved for an order prohibiting defendant from introducing the 1980 Plan and related amendment documents into evidence. (Letter from Richard Metli to the undersigned, dated March 10, 2005, at 1.) In the letter, plaintiff's counsel explained the significance of the 1980 Plan. Plaintiff's counsel states that on January 2, 1995, when Izzo moved from working in-house for Aetna (now ING) to working as an independent producer, he understood that, notwithstanding his move, he would continue to participate in Aetna's retirement plan. (Id. at 2.) Izzo claims that the language of Aetna's 1980 Plan ("1984 plan," as amended) entitles him to participate in the Plan, and he claims never to have received a copy of the 1980 Plan. (Id.) Plaintiff's counsel further states that, while ING argues that the 1980 Plan has been amended in a way that excludes plaintiff from coverage, ING has consistently failed to provide the plaintiff with the original 1980 Plan or the dates of amendment, and has also refused to state in writing that ING did not have the documents in its possession. (Id.) ING has never disputed the relevancy of the above documents pursuant to Rule 26(b), Fed. R. Civ. P.

The defendant argues in opposition to plaintiff's motion for preclusion that it timely transmitted all relevant documents in its possession to the plaintiff, and that it advised plaintiff in telephone calls– albeit late– "that the precise documents plaintiff sought had been searched for but were not located." (Def.'s Opp'n to Order to Show Cause ("Def.'s Opp'n") at 6.)

On June 1, 2005, an evidentiary hearing was held before the undersigned. Subsequent to that hearing, certain additional relevant documents were obtained by ING from Aetna pursuant to subpoena. Notwithstanding this post-hearing production, it appears that the complete 1980 Plan and amendment documents have never been produced. There is no request by plaintiff to preclude the use of the documents turned over by ING after the evidentiary hearing.

I.      FINDINGS OF FACT

        A.      The Evidentiary Hearing

        Plaintiff's counsel, James E. Robinson ("Robinson"), testified at the hearing that on October 7, 2003, in the attempt to complete discovery, he drafted a letter to ING's counsel, George O. Richardson ("Richardson"), summarizing plaintiff's open discovery demands. (Transcript of Evidentiary Hearing before E. Thomas Boyle ("Transcript"), dated June 1, 2005, at 4. See also Exs. to Aff. of James E. Robinson Dated May 13, 2005 ("Robinson Aff."), Ex. 1.) The October 7, 2003 letter discusses the items plaintiff set forth in its initial document demand, and notes in paragraph 4 ("Item 4") that one of the open document discovery items is "the dates of the various amendments to the 1980 Plan Document and copies of the historical (pre-amendment) versions of the pages or provisions affected by each amendment." (Robinson Aff., Ex. 1 ¶ 4.) Robinson testified that in response to the letter, he received a letter from Richardson, dated November 20, 2003, tracking Robinson's letter item by item and indicating: "4. We recently received historical plan documents and will provide them to you shortly." (Tr. at 5. See also Robinson Aff. Ex. 3.) This letter was sent immediately following the November 20, 2003 conference before the undersigned, at which defendant was ordered to comply with all of plaintiff's outstanding discovery requests. (See Order by the undersigned, dated, November 20, 2003.)

        Robinson testified that he next received from the defendant a letter dated December 4,

2003, with a package comprised of the retirement plan (as opposed to pension plan) for employees

of Aetna Life and Casualty Company.  (Tr. at 9.  <u>See also</u> Robinson Aff. Ex. 5.)  Robinson testified

that he understood these documents to be the defendant's response to "item five" of plaintiff's

request as set forth in his October 7 letter.  Robinson testified that in a letter transmitted by him on

January 14, 2004, he attached a copy of his October 7 letter, marked to include arrows next to each

discovery request still outstanding, including "item 4," the request for the 1980 pension plan and

amendment information.  (Tr. at 9.)  Robinson stated that, to his recollection, he did not get a

response to the fax.  (<u>Id.</u> at 11.)  None has been produced by ING.

     Robinson testified that he sent another letter to Richardson, dated February 2, 2004, as

confirmation that the defendant had agreed to provide the remaining open discovery items prior to

the re-submission of Izzo's claim to the benefits committee.  (<u>Id.</u> at 12.  <u>See also</u> Robinson Aff. Ex.

7.)  Robinson testified that he did not receive any response to this letter from Richardson.  (Tr. at

12.)  None was produced by ING.

     Thereafter, Robinson testified that he sent Richardson a series of  letters on a near-monthly

basis between April 2004 and November 2004, requesting that the defendant furnish the

outstanding discovery items.  (<u>Id.</u> at 12-13.  <u>See also</u> Pl.'s letter motion for preclusion, dated

March 10, 2005, Ex. 5.)  The October 14, 2004 letter from Robinson to Richardson discusses the

"item 4" request for the 1980 plan and related documents in detail.  (Robinson Aff. Ex. 9.)  It

states: "[o]ur repeated requests for this information have been premised on the statement in your

November 20 [2003] letter that the responsive documents were available and would be produced.

If, as you seemed to indicate when we spoke yesterday, the defendant is not in possession of any

further responsive documents, then we would be operating under a set of circumstances different

from what we had understood up to this point."  (<u>Id.</u> at 2.)  Robinson's letter specified: "If

ING/Aetna is not in possession of any documentation pertaining to the timing and substance of the amendments, then we would like a formal written discovery response to that effect.. . If, on the other hand, ING/Aetna is in possession of documents pertaining to the amendments, then we would renew our request that they be produced immediately." (Id.) Robinson testified that the letter was written subsequent to a conversation he had with Richardson on October 13, 2004, in which Richardson asked Robinson if he was sure the defendant had not responded to all of plaintiff's discovery requests. (Tr. at 16.) Robinson testified that he received no response to the letter. (Tr. at 17.) None has been produced by ING.

Robinson sent Richardson another letter, dated November 10, 2004, again requesting that ING/Aetna respond to the plaintiff's request for information concerning the timing and substance of amendments to the 1980 pension plan. (Robinson Aff. Ex. 10.) In the letter, Robinson stated that if the requested information was not produced by November 19, 2004, the plaintiff would move for an order precluding the defendant from introducing the language of the 1980 Plan into evidence or in any way relying on it at trial. (Id.) In response to this letter, Robinson testified, Richardson called to say he was sending documents to the plaintiff. (Tr. at 17.) Robinson testified that the documents he received related generally to the amendment and restatement of the plan, but that the documents did not satisfy plaintiff's request. (See id. at 19.) ING and its counsel do not dispute this. Robinson testified that, at some point in November or December of 2004, Richardson verbally advised him that the defendant did not have any other responsive documents. (Id. at 19-20, 23.) According to Robinson, this was the first time defendant had indicated it did not have the documents. (Id. at 20.) Richardson never confirmed this in writing, despite being asked to do so by plaintiff. (Id.) I credit Mr. Robinson's testimony. Thus, ING and its counsel delayed approximately one year in orally responding that it was unable to produce the 1980 Plan and

relevant amendment documents and refused to provide plaintiff with a written response to that effect until ordered to do so by the Court at the end of the evidentiary hearing in June 2005. Thus a period of more than 20 months elapsed of evasive and incomplete responses by ING and its counsel.

ING and its counsel did not call any witnesses at the hearing.[1]  In response to the Court's inquiry about the portions of the 1980 pension plan and related documents not provided to the plaintiff, counsel to ING acknowledged that "[t]here are documents that existed at a point in time as recently as 2000 that don't exist now."  (Id. at 47.)  While counsel for ING claims that the documents were never turned over to ING by Aetna when ING acquired Aetna's financial services division (Aetna Life Insurance Annuity Company) in December 2000 (Id. at 49-50), this contention is not supported by the deposition testimony of ING's employee Patricia Hubbard, discussed infra.


B.     Deposition Testimony of Aetna/ING Employees

On April 28, 2005, in connection with the pending motion and prior to the evidentiary hearing, the plaintiff deposed certain ING/Aetna employees, including Patricia S. Hubbard ("Hubbard"), who had been employed by ING or its predecessor Aetna since 1981.  (Id. at 60.) Hubbard testified that in 1985 she began working in the benefits unit as a consultant, and that in 1992, she became a senior benefits consultant.  (Id. at 61, 70.)  When shown a copy of what ING's counsel apparently believed to be the 1980 Plan documents and amendments defendant produced to plaintiff, Hubbard testified that the documents appeared to be only "a section of the original plan document."  (Id. at 63.)  She testified that the complete document included the original documents,

---

[1]Mr. Richardson was present at counsel table throughout the evidentiary hearing but never testified.

amendments, and historical pages stating the date an amendment was made, the historical page number, and the signature of the individual who authorized the change.  (<u>Id.</u> at 64-65.)  It is undisputed that a complete set of these documents has not been produced.

She testified that during the sale of Aetna to ING, she and others made copies of all the plan documents "because the new ING legal department was interested in all the agents benefits plan so they could be familiar with the plan."  (<u>Id.</u> at 64.)  This is consistent with the employer's duties under ERISA, discussed <u>infra</u>.  She further stated that co-worker Claudia Labri, who is still employed with ING, sent copies of the plan documents to ING at its Atlanta office, and that the last time she saw the "complete plan documents" was in late 2000.  (<u>Id.</u> at 63-64, 66.)  Hubbard stated that "the [in-house] attorneys should have a full copy of the plan document. . . Frances Stein [sic] would have a full copy of the plan document."

Hubbard also testified that she asked the current plan counselor for  a copy of the pension plan documents to prepare for her deposition, but the documents were not located.  Ms. Hubbard testified that the first time she was asked to look for the complete plan document was in March 2005 in connection with her up-coming deposition (taken in April 2005).  (<u>Id.</u> at 68-69.)  No one had requested from her a copy of the original plan documents prior to this, notwithstanding the order dated November 20, 2003, to provide these documents within ten days.  (<u>Id.</u>)

In connection with the pending motion, on April 28, 2005 the plaintiff also deposed Karen E. Cooper ("Cooper"), who has been an in-house attorney with ING since November 1998.  (<u>Id.</u> at 76.)  Cooper testified that, as senior counsel at ING, she hired Sullivan & Worcester to work on this case.  (<u>Id.</u>)  Richardson reports to her.  (<u>Id.</u>)  She testified that when the case was first filed, she sent a memo to between ten and twelve people asking them to send her any documents that pertain to the case, and instructing them not to destroy documents that might be relevant to the case.

(Id. at 85.)  This was a generic request that was not specific as to any particular document discovery demand made by plaintiff herein.  Documents were provided by ING's Hartford office, which were not reviewed by Cooper in Atlanta.  (Id. at 84-85.)  She testified that additionally, in a concerted effort to respond to plaintiff's outstanding discovery requests, as set forth in Robinson's October 7, 2003 letter, she e-mailed individuals she felt might have relevant information.  (Id. at 81.)  She was unable however to identify anyone in ING who might have been contacted.  (Id. at 81-82.)

Cooper testified that Frances Steen received the first general memo requesting documents, but that Steen did not have any specific instructions to respond to a document production request.  (Id. at 85.)  Further, Cooper testified that Steen provided some documents, but stated that, with regard to Robinson's February 2, 2004 letter to Richardson, which reiterated the defendant's confirmation that it would respond to the open discovery, including the 1980 Plan request,  "I don't know whether she reviewed the request against documents that she had."  Cooper was asked next:  "She didn't get any general instructions from you?", and she answered, "No, she did not."  (Id. at 84-85.)  She stated that no one has located the 1980 Plan document and related documents at issue here.  (Id. at 89-90.)

C.      Control of the Documents by ING

On May 23, 2005, a week prior to commencement of the evidentiary hearing, ING subpoenaed Aetna for the missing documents, while maintaining that plaintiff, rather than ING, had the obligation to subpoena Aetna.  (Richardson Aff. ¶ 19, ¶ 20.)  Defendant states that while the documents produced by Aetna in response to the subpoena do not respond entirely to plaintiff's request, they contain some of the dates of the amendments to the 1980 Plan.  (Id. ¶ 20.)  The plaintiff has not requested preclusion as to these documents.

After the evidentiary hearing, ING was directed to produce the merger document provisions relative to pension plan records. Plaintiff maintains that "ING had a contractual right to obtain documents and information concerning benefit plans from Aetna and this gave rise to a duty to produce the historical plan documents." (Metli Aff. ¶¶ 8-14.)

The Employee Benefits Agreement between Aetna Inc. and Aetna U.S. Healthcare, Inc. relating to the merger dated as of December 13, 2000 ("Employee Benefits Agreement"), provides at Section 6.03(a):

> On and after the date hereof, AUSHC [the former Aetna U.S. Healthcare Inc. and present Aetna, Inc.] will, at the reasonable request of AI [the former Aetna, Inc. and present ING subsidiary], execute, acknowledge and deliver all such endorsements, assurances, consents, assignments, transfers, conveyances, powers of attorney and other instruments and documents, and take such other actions necessary (i) to assign, transfer, convey and deliver to AI, acting in its fiduciary capacity, all the assets to be transferred to AI pursuant to this Agreement and (ii) to assist AI in obtaining the consent and approval of all Governmental Agencies and other Persons required to be obtained by AI to effect the transfer thereof and the assumption of the AI Assumed Liabilities by AI or otherwise appropriate to carry out the transactions contemplated hereby.

Employee Benefits Agreement § 6.03(a).

Section 10.12 of the same agreement states:

> *Cooperation and Coordination.* The parties agree to share, and furnish each other with, such information concerning employees and employee benefit plans, and to take all such other action, as is necessary and appropriate to effect the transactions contemplated hereby, and to coordinate, in advance, the time, form and content of communications to current and former employees of the parties relating to such transactions.

Id.

Defendant argues that the phrase "or otherwise appropriate to carry out the transactions contemplated hereby" in Section 6.03, and the similar phrase "as is necessary and appropriate to

effect the transactions contemplated hereby" in Section 10.12, explicitly limit the obligation to exchange information to that necessary to close the Aetna-ING transaction, which closing occurred in December 2000, prior to plaintiff's claim. (Richard Decl. ¶ 7.) Defendant has provided no evidence or case law in support of this strained reading of the contract, and I am not persuaded by defendant's argument. Moreover, ING's argument contradicts the testimony of its own employee, Pat Hubbard, who testified at deposition that the plan documents were in fact provuded to ING's legal department in Atlanta at the time of the merger, at the latter's request.

D.      Thwarting the Plaintiff's Re-submission

On April 1, 2004, this action was administratively closed in order to afford the parties the opportunity to pursue private settlement procedures. The parties agreed that the plaintiff would make a re-submission to ING's retirement Benefits Committee, and plaintiff's understanding was that such re-submission would occur after the production of discovery documents sought by plaintiff, discussed supra. (Tr. at 20.) The defendant acknowledges that at the time that the parties requested administrative closure for this purpose, there was no discussion concerning any adverse impact the re-submission would have on the plaintiff's case if it wasn't resolved. (Id. at 92.) Plaintiff's counsel prepared the re-submission, and sent a copy to Richardson and a copy to one of the individuals at ING who would be considering the claim. (Id. at 20-21.) In the cover letter accompanying the submission, plaintiff's counsel stated that the re-submission was to be considered for settlement purposes only, and set forth plaintiff's understanding that the re-consideration of the claim would occur without prejudice to the rights of the parties. (Id. at 21-22.)

Plaintiff's counsel testified that approximately two weeks after Richardson received a copy of the re-submission and cover letter, Richardson called plaintiff's counsel and stated that the

understanding between the parties was that even though the re-submission was during the administrative closure of the action, the decision of the Benefits Committee would become part of the action and subject to whatever deference it was entitled to under ERISA together with the original denial of benefits.  (Id. at 12-13, 22.)  It was the position of the plaintiff, shared by the undersigned, that the administrative closure was to afford the parties the opportunity to settle the case through a reconsideration, based on additional documents and depositions obtained through discovery, and that the re-submission would not be considered a part of the litigation of the case, but rather would be viewed solely as an attempt by the parties to privately settle the action without incurring the costs and fees attendant to a motion for summary judgment, and without prejudice to either party.  If plaintiff prevailed upon reconsideration by the Committee, the action was settled.  If plaintiff did not prevail on reconsideration, the plaintiff had the right to restore this action to the active calendar without reference by either party as to the informal effort to settle the case through the re-submission process.

The joint request for administrative closure does not support the conditions placed on the re-submission by ING and its counsel.  No such conditions were expressed by counsel in the request to administratively close the case for a year.  Ironically, the request was made by ING's counsel, Sullivan and Worcester, dated January 29, 2004, and states in relevant part:

> Pursuant to the Court's suggestion at the conference on November 20, 2003, the parties have agreed to resubmit the plaintiff's claims to defendant's Benefits Committee.  If this process were successful, it would resolve the entire case.

> At that conference the Court also suggested that if the parties chose this route, that the case would be placed on the suspended (sic) calendar.  The parties so request.

* * *

> If the re-submission were not successful then plaintiff would
> be allowed to take the deposition [of a member of defendant's
> Benefits Committee with respect to the procedures relative to the
> original denial of benefits by the Committee which gave rise to the
> action].

(Correspondence of George O. Richardson III, dated January 29, 2004, at 1.)

Further consistent with the concept of closure to afford the opportunity to privately settle this action through a re-submission, the undersigned in a Report and Recommendation addressed to the district judge, stated:

> In the hope of resolving this action, the parties have agreed to re-
> submit the plaintiff's claims to the defendant's Benefits Committee.
> The parties request that this action be held in abeyance pending the
> outcome of this process.

(Report and Recommendation by the undersigned, dated February 2, 2004, at 1.)

Neither party objected to this Report and Recommendation, which was adopted by the district judge (Spatt, J.) by endorsed order, dated April 1, 2004, administratively closing the action with leave to any party to move to restore to the active calendar within one year. (See Endorsed Order by Judge Spatt, dated April 1, 2004.)

ING's counsel now says that it contemplated that any such re-submission would be entitled to ERISA deference, just as the original benefits denial giving rise to this action. ING's counsel takes the position that the pleadings would be amended to reflect the reconsideration and denial of the Benefits Committee on the re-submission during the administrative closure. (Tr. at 95.) ("Mr. Sullivan: I think there would be an amendment to the pleadings.") Thus, rather than just one ERISA determination, plaintiff would have to show that both determinations were arbitrary and capricious (assuming for the sake of this discussion that that is the applicable standard of review).

Plaintiff's counsel set forth plaintiff's position by letter to Richardson, dated January 20,

2005:

>We spent a whole year asking for discovery to support a re-submission in anticipation of a fair reconsideration of your client's position. Never once during the entire period did you even suggest that the re-submission would be final and binding on the parties. Even this past December when we inquired as to the form of submission your client contemplated, you never told us that ING/Aetna would seek to have the claim placed in the hands of the Committee for purposes of a binding determination.

(Id.)

Defendant's counsel made no written response to this correspondence– choosing instead to merely state their position orally by telephone.  At the hearing, ING and its counsel offered no explanation for not stating its position to the plaintiff prior to the closure of the action.  (Tr. at 98.) Defendant's counsel instead testified that plaintiff was the one attempting to impose a new condition on the re-submission.  (Id. at 94.)

II.     DISCUSSION

A.     Sanctions Under Rule 37

Federal Rule of Civil Procedure 37 permits a court to impose sanctions on a party or counsel who deliberately fails to "make a disclosure required by Rule 26(a)," Fed. R. Civ. P. 37(a)(2)(A), or who provides an "evasive or incomplete disclosure, answer or response." Fed. R. Civ. P. 37(a)(3).  See Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 267 (S.D.N.Y. 2003). "Sanctions are particularly appropriate when the party against whom sanctions are sought has failed to comply with a court order to provide discovery."  Welch v. Alexis, No. 03 CV 2528, 2004 WL 1920810, at * 1 (May 26, 2004 E.D.N.Y.) (citations omitted).  In Nike, certain defendants repeatedly made evasive and incomplete disclosures, forcing the plaintiffs to secure testimony from individuals they would not have needed to depose, but for the defendants' evasive

conduct. <u>Nike</u>, 216 F.R.D. 259 at 273. The court held that the defendants' conduct impaired the plaintiffs' ability to present their case, and that the plaintiffs were therefore entitled to reasonable costs and attorneys fees under Rule 37(c). <u>Id.</u> at 274. In <u>Cathay Pacific Airways, Ltd. v. Fly and See Travel, Inc.</u>, the plaintiffs sought documents that the defendants continually refused to provide, and that, as the Court noted, "may no longer exist. . . [or] are not in the possession of defendants." <u>Cathay Pacific Airways, Ltd. v. Fly and See Travel, Inc.</u>, Nos. 90 Civ. 0371, 90 Civ. 0372, and 90 Civ. 5049, 1991 WL 156381, at * 3 (S.D.N.Y. Aug. 8, 1991). The court went on to state: "However, if that is the case, the defendants have an obligation to say so clearly and specifically. . .[o]nly defendants know if [the information] is available and playing 'cat and mouse' with the plaintiffs is inconsistent with both the letter and spirit of the federal discovery rules." <u>Id.</u> The court held that the defendants' responses were evasive and incomplete, effectively constituting a failure to answer, and awarded plaintiffs reasonable expenses under Rule 37, including attorney's fees. <u>Id.</u> at *4.

 Additionally, Federal Rule of Civil Procedure 37(b)(2) provides that if a party fails to obey an order to provide discovery, the court may "make such orders in regard to the failure as are just," including an order prohibiting the disobedient party from introducing designated matters in evidence (37(b)(2)(B)). The rule further provides that

> in lieu of any of the foregoing orders or in addition thereto, the court <u>shall</u> require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Rule 37(b)(2)(E), Fed. R. Civ. P. (<u>emphasis</u> <u>added</u>).

 Disciplinary sanctions under Rule 37 are intended to serve three purposes: "[f]irst, they

ensure that a party will not benefit from its own failure to comply.  Second, they are specific

deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended

to serve a general deterrent effect on the case at hand and on other litigation. . . ."  <u>Update Art, Inc.</u>

<u>v. Modin Publishing, Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988) (citations omitted).  <u>See also</u> <u>Cine</u>

<u>Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.</u>, 602 F.2d 1062, 1066 (2d Cir.

1979).  As the Second Circuit Court of Appeals has further noted, "'[i]f parties are allowed to

flout their obligations, choosing to wait to make a response until a trial court has lost patience with

them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result

directly contrary to the overall scheme of the federal discovery rules."  <u>Cine Forty-Second Street</u>

<u>Theatre</u>, 602 F.2d at 1068.

Although authorized under Federal Rule of Civil Procedure 37, "preclusion of evidence . .

. [is a] harsh remedy and should be imposed only in rare situations. . . ."  <u>Update Art, Inc. v.</u>

<u>Modin Publishing, Ltd.</u>, 843 F.2d 67, 71 (2d Cir. 1988). Such a severe sanction is justified "when

the failure to comply with a court order is due to willfulness or bad faith, or is otherwise

culpable."  <u>Daval Steel Products v. M/V Fakredine</u>, 951 F.2d 1357, 1365 (2d Cir. 1991).

Here, the plaintiff acknowledges that the need for an order of preclusion has been greatly

reduced by the production of certain documents after the filing of the  motion.  Some– but not all--

of the relevant documents plaintiff seeks were reportedly produced pursuant to a subpoena issued

by ING to Aetna.  These documents are favorable to plaintiff's position and therefore preclusion is

not requested as to the produced documents.  Thus the Court is faced with a request to preclude

unproduced documents– the whereabouts of which are unknown. Preclusion, under the

circumstances presented here, does not appear to be an appropriate remedy, since the whereabouts

of the complete 1980 Plan and amendment documents are unknown.  I instead certify discovery as

complete and absent any further order of the Court, the parties shall rely only on the documents

produced to date for purposes of the ensuing motions for summary judgment.

> B. <u>The Sought-After Documents are Within ING's Control</u>

>> 1. <u>The Control of the Documents Pursuant to the Merger Agreement</u>

The defendant argues that the language regarding cooperative efforts in the

employee benefits agreement between Aetna Inc. (present ING subsidiary) and Aetna U.S.

Healthcare, Inc (AUSHC) severely limits its obligation to obtain the documents from Aetna

(former AUSHC). Specifically, the defendant argues that the cooperative efforts were confined to

those appropriate or necessary "to effect the transactions contemplated hereby," meaning,

according to the defendant, the only documents required to be exchanged were those necessary to

close the Aetna-ING transaction, which closing occurred in December 2000. Defendant provides

no support for this narrow contractual interpretation.

"'A court should interpret a contract in a way that ascribes meaning, if possible, to all of

its terms.'" <u>Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.</u>, 962 F.2d 268, 272-

73 (2d Cir. 1992) (citing <u>United States Naval Inst. v. Charter Communications, Inc.</u>, 875 F.2d

1044, 1049 (2d Cir. 1989) (additional citations omitted). The court must also give due

consideration to the intent of the parties and the purpose to be accomplished by the contract. <u>RLS</u>

<u>Associates v. United Bank of Kuwait</u>, 380 F.3d 704, 710 (2d Cir. 2004). Here, one purpose of the

employee benefits agreement between the present Aetna (former AUSHC) and ING was to

transfer to ING all assets and liabilities arising under any employment agreement, including

pension and other retirement benefits, to be maintained by ING as the new employer. (Employee

Benefit Agreement at 20-21.) In connection with the transfer of these assets, ING is entitled, "on

and after the date hereof," to make a reasonable request for such documents necessary to assume

the liabilities of maintaining the employee benefits plan. (Id. at 22.) If, as the defendant urges, its contractual right to such documents was limited to only the time necessary to close the Aetna-ING transaction, it is unlikely that the contract would not so specify. The contract instead states that Aetna will provide such documents upon ING's reasonable request, "on and after the date hereof" (emphasis added). (Id.) Accordingly, when read as a whole, the contract fails to limit ING's contractual right to the documents to the time period surrounding the closing of the Aetna-ING transaction. For this reason there was no necessity for issuance of a subpoena by ING to obtain any of the relevant pension retirement benefits documents in the possession of Aetna.

Moreover, the construction defendant urges is flatly contradicted by the testimony of ING's employee, Patricia Hubbard, who testified that at the request of ING's legal department in Atlanta, copies of the original plan documents and amendments were provided at around the time of the merger in December 2000. It is also inconsistent with her testimony that as recently as 2000 she had reviewed the complete plan documents. Lastly, ING's interpretation is at odds with its legal obligation as an employer under ERISA, discussed below.

2.      ING's Obligation Under ERISA to Possess the Documents

ING's construction of the merger contract is also inconsistent with its obligation under ERISA as the new employer of former Aetna employees and agents. Therefore, regardless of the merger agreement, ING, as the successor employer, had the obligation under ERISA to maintain a written version of its employee pension and retirement benefit plan. 29 U.S.C. § 1102. See also Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202, 1208 (2d Cir. 2002); Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 77-78 (2d Cir. 1996); Moore v. Metro Life Ins. Co., 856 F.2d 488, 492 (2d Cir. 1988). As the Second Circuit has stated, "[t]his written instrument requirement is central to our analysis of ERISA plans because 'it serves two of the primary goals

18

of ERISA: informing employees of the benefits to which they are entitled, and providing some degree of certainty in the administration of benefits.'"  Feifer, 306 F.3d at 1208 (quoting Wentworth v. Digital Equip. Corp., 933 F. Supp. 123, 127 (D.N.H. 1996)).

Further, ERISA sets forth very stringent disclosure requirements, established by Congress for the purposes of "ensuring that 'the individual participant knows exactly where he stands with respect to the plan . . .'".  Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 118, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) (citing H.R. Rep. No. 93-533, at 11 (1973), as reprinted in 1978 U.S.C.C.A.N. 4649).  Section 1024(b) of ERISA directs that the administrator of a plan "shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period . . .".  29 U.S.C. § 1024 (b)(1)(B) (emphasis added).  A summary plan description, including a "summary of any material modification in the terms of the plan," must also be provided to plan participants and beneficiaries on a  regular basis.  29 U.S.C. § 1022(a); 29 U.S.C. § 1024(b)(1)(B).  Additionally, the statute provides that the plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  This section has been interpreted to require "that the plan administrator furnish copies of the actual plan documents (including amendments) under which the plan is operated."  McFaul v. Loews Corp., No. 93 Civ. 2401, 1993 WL 541778, at *2 (S.D.N.Y. Dec. 30, 1993).

Here, ING contends that the plaintiff was not entitled to certain benefits, based on

19

language contained in an amended version of the 1980 Plan (the "1984 plan," as amended), which it insists should be read into the 1994 plan. The complete 1980 Plan and related dates of amendment and documents have not been produced in this action. ING's posture in this action is disingenuous. ING relies on incomplete portions of the 1980 Plan and related amendments to deny benefits to the plaintiff, while simultaneously arguing that it has no obligation to possess all the relevant historical documents of the plan and amendments. The Second Circuit has rejected such attempts by an employer to "opt-out" of ERISA's requirements. See Feifer, 306 F.3d at 1209-1210 (noting that disregarding ERISA's requirements could "allow an employer effectively to use a subsequent [non-plan] document to make post-hoc changes in plan terms without complying with the plan amendment procedures that employers must specify under 29 U.S.C. § 1102(b)(3)").

Under ERISA, ING as an employer is charged with the duty of possessing all such documents in order to administer benefits pursuant to ERISA. See 29 U.S.C. § 1102. Thus, ING cannot hide behind any deficiency in the drafting of the merger documents to escape its statutory duties as an employer under ERISA. ING's defensive posture has prevented plaintiff from timely acquiring the materials to which he is entitled and which are necessary to prepare his case for summary judgment and trial. I leave to the learned district court judge the issue of what, if any, effect ING's failure to produce a complete set of original plan documents and amendments may have on the outcome of this action.

C.    Attorney's Fees and Expenses Under Rule 37

Under Rule 37(b)(2), "the imposition of reasonable expenses is mandatory, unless the record establishes either that the failure to obey the Court order was substantially justified or that other circumstances make an award of expenses unjust." Stanziale v. First Nat'l City Bank, 74

F.R.D. 557, 560 (S.D.N.Y. 1977). The Second Circuit has characterized this sanction as "the mildest" of the sanctions authorized by Rule 37. <u>Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.</u>, 602 F.2d 1062, 1066 (2d Cir. 1979).

Here, ING and its counsel argue that sanctions are not warranted because ING thoroughly searched for the 1980 Plan and amendment history which it had not produced, and ultimately, <u>verbally</u> advised plaintiff that it did not have the sought after items.

From at least October 7, 2003 through November or December 2004, defendant failed to either produce the complete copy of the 1980 Plan and amendment information or affirm in writing that it did not have the documents sought by plaintiff. This refusal to provide an adequate response is evasive and constitutes incomplete disclosure, which "is . . . treated as a failure to disclose, answer or respond." Rule 37(a)(3). This failure persisted in the face of: (1) a November 20, 2003 court order directing the defendant to comply with the plaintiff's outstanding discovery requests by December 5, 2003; (2) defendant's written misleading acknowledgment on November 20, 2003, in response to plaintiff's specific inquiry about the 1980 Plan and amendments, that it had "recently received historical documents" and would provide them to the plaintiff shortly; (3) no fewer than ten letters, over the course of approximately a year, from the plaintiff inquiring about the open discovery requests, including the 1980 Plan and amendment information; and (4) the June 1, 2005 evidentiary hearing on this matter, at which time defendant still had not stated in writing that it had conducted a thorough search for the documents and did not have them.[2]

If the defendant had provided an unequivocal written response stating that it wasn't in

---

[2]At the conclusion of the evidentiary hearing, I directed ING to submit an affidavit with regard to the diligence of any search and the results of that search. Richardson thereafter submitted the affidavit, dated June 7, 2005.

possession of the documents, "the inquiry would likely have been at an end." (Metli Aff. ¶ 3.) Instead, the defendant stonewalled the plaintiff, causing this protracted dispute and necessitating judicial intervention. Defendant has offered no adequate explanation for its evasive , misleading, and incomplete responses to plaintiff's monthly requests over the course of more than a year. ING's conduct is not justified. Moreover, it bears noting that the 1980 plan documents that the defendant produced after the hearing were presented to plaintiff as a complete copy of the plan with relevant amendments. It was only revealed to be incomplete when, in connection with this motion, the plaintiff took the depositions of ING's in-house pension consultant, Patricia Hubbard, who testified that they were incomplete, discussed <u>supra</u>.

ING has failed to show diligence in its efforts to obtain a complete copy of the 1980 Plan and related documents prior to issuance of the show cause order. The testimony of in-house counsel, Cooper, revealed that her efforts to locate the documents consisted of a generic request to ten to twelve people to send her any documents pertaining to the case, and thereafter sending a second e-mail to particular unnamed individuals she thought may have relevant information concerning the 1980 Plan and amendment documents. (Tr. at 81-85.) Cooper also testified that she never gave Frances Steen, the in-house attorney who ING benefits consultant Patricia Hubbard testified should have a complete copy of the document, any specific instructions to look for the document. (<u>Id.</u> at 84-85.) Nor did she contact Hubbard, another knowledgeable person employed by ING. Moreover, Ms. Hubbard, who is a knowledgeable pension consultant employed by ING testified that it was not until March 2005– one month before her deposition– that she became aware of any request for the 1980 Plan and amendments. The lack of diligence and the evasive and incomplete response to the order of the Court and to plaintiff's repeated demands warrants the imposition of reasonable costs against ING incurred by the plaintiff in the pursuit of this discovery.

ING shall pay to plaintiff reasonable costs, including attorney's fees, incurred by the

plaintiff as a result of its evasive and incomplete disclosure in this action.  Rule 37(a)(3) and (4).

See also Welch v. Alexis, No. 03 CV 2528, 2004 WL 1920810, at * 1 (May 26, 2004 E.D.N.Y.);

Nike, Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259, 267 (S.D.N.Y. 2003); Cathay Pacific Airways,

Ltd. v. Fly and See Travel, Inc., Nos. 90 Civ. 0371, 90 Civ. 0372, and 90 Civ. 5049, 1991 WL

156381, at * 3 (S.D.N.Y. Aug. 8, 1991).

       D.      Attorney's Fees and Expenses Under 28 U.S.C. § 1927

28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

The purpose of the statute is "to deter unnecessary delays in litigation."  H.R. Rep. No. 96-1234, at

8 (Conf. Rep.), as reprinted in 1980 U.S.C.A.A.N. 2716, 1782.  Sanctions under Section 1927 are

warranted "when the attorney's actions are so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose such as delay."  Id.

(citing Oliveri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986), cert. denied, 480 U.S. 918, 107

S. Ct. 1373, 94 L. Ed. 2d 689 (1987)).  Additionally, the Second Circuit Court of Appeals has

established that a finding of bad faith on the part of the attorney is a prerequisite to imposing

sanctions under this statute.  United States v. International Brotherhood of Teamsters, 948 F.2d

1338, 1345 (2d Cir. 1991) ("Bad faith is the touchstone of an award under this statute.").  The

Second Circuit has emphasized that, in imposing sanctions, the trial court must find clear evidence

that the offending party acted for improper purposes.  Revson v. Cinque v. Cinque, 221 F.3d 71,

78 (2d Cir. 2000).

Here, plaintiff's efforts to obtain the requested discovery, set forth in detail supra,

consisted of repeated letters and phone calls, over the course of 2003 and 2004, to get the

documents.  During this time, defendant's counsel (1) misled plaintiff into believing the documents

were forthcoming; (2) turned over non-responsive documents instead of the requested documents;

and (3) refused to provide a written response to the request for the 1980 Plan and related

documents at issue here.  Courts in this jurisdiction have held that such repeated failure to produce

documents, particularly after the entry of a Court order directing production of the documents,

constitutes bad faith on the part of defendant's counsel.  See Apex Oil Co. v. Belcher Co. of N.Y.,

855 F.2d 1009, 1019-1020 (2d Cir. 1988) (affirming district court's award of sanctions under

Section 1927 where defense counsel refused to timely produce documents); Source Enterprises,

Inc. v. Tanners Ave. Corp., No. 04 Civ. 1788, 2004 WL 247536, at *4-5 (Nov. 3, 2004) (noting

that sanctions could be imposed under Section 1927 for counsel's persistent failure to respond to

plaintiff's discovery requests);  Brignoli v. Balch, Hardy & Scheinman, Inc., No. 86 Civ. 4103,

1989 WL 146767, at *14 (S.D.N.Y. Dec. 1, 1989) (ordering sanctions under Section 1927 where

counsel repeatedly refused to produce documents, despite counsel's contentions that the documents

were not withheld intentionally and that he believed that the documents had already been

produced).

　　　　After more than a year's delay, when defendant's counsel affirmatively stated that ING did

not have the documents, counsel stonewalled plaintiff's repeated request to so state that in writing

in response to the demand.  Moreover, it was not until plaintiff took depositions in connection with

its motion to preclude and the show cause order that defendant's counsel offered the meritless

explanation for his conduct that ING had no contractual right to obtain the documents from its

predecessor, Aetna, discussed supra.  Under these circumstances, the issuance of a subpoena by

counsel addressed to ING is simply a subterfuge for failing to otherwise seek production of the

documents within the control of ING.

Thereafter, when plaintiff was prepared to re-submit the issue to ING's pension Benefit Committee as contemplated by the administrative closure order, ING's counsel again set up further road-blocks. The failure of defendant's counsel to set forth his client's position concerning the re-submission, a position clearly not contemplated by the plaintiff or the Court when the re-submission and the administrative closure of this action were initially discussed, has further delayed and ultimately thwarted the private settlement mechanism which was the basis for the administrative closure. I conclude that had plaintiff been cognizant of defendant's position at the time re-submission was first discussed, plaintiff would not have agreed to the year delay for the re-submission and administrative closure, and further conclude that ING's counsel changed the conditions governing the re-submission to thwart the purpose of the administrative closure.

Based on the foregoing, I conclude that defendant's counsel has acted in bad faith in substantially delaying discovery in this action, thwarting the settlement re-submission as a private settlement mechanism and unnecessarily, unreasonably, and vexatiously adding to the complexity and cost of this litigation. Accordingly, ING's counsel, Sullivan & Worcester, is directed to pay to plaintiff the excess costs, expenses, and attorneys' fees reasonably incurred by plaintiff because of this conduct.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for preclusion of evidence or otherwise appropriate relief is granted to the extent that discovery is certified as complete as to all documents in this action. Plaintiff's motion for costs pursuant to Rule 37 is granted. Defendant ING shall pay to plaintiff reasonable costs, including attorney's fees, incurred by the plaintiff as a result of defendant's evasive, misleading and incomplete responses to document demands. In

addition plaintiff is awarded costs pursuant to 28 U.S.C. § 1927 against the defendant's law firm, Sullivan & Worcester. I leave to ING and its counsel, Sullivan & Worcester, to initially determine the appropriate allocation of costs.

Plaintiff shall submit an affidavit of costs and services incurred herein, together with contemporaneous time records, on notice to all parties, within twenty (20) days. Defendant shall submit any opposition thereto within twenty (20) days from the date of receipt of plaintiff's submission. A reply, if any, shall be served and filed within seven (7) days from the latter date.

SO ORDERED.

Dated: Central Islip, New York
      September 30, 2005

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge